IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW ALEXANDER KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KATHY HILL, | )  Case No. 21-cv-1698-DWD |
| DAN SPROUL, | ) |
| J. LECLAIR, | ) |
| C. DAVIS, | ) |
| GRAEBER. | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Matthew Alexander King, an inmate of the Federal Bureau of Prisons (BOP) detained at the United States Penitentiary at Marion (Marion), brings this civil rights action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (allowing suits against federal employees for violations of constitutional rights), and various provisions of Illinois state law. King originally filed his case in state court, but the Defendants removed the case based on the Westfall Act, 28 U.S.C. § 2679(b)(1), and 28 U.S.C. § 1442(a)(1). The allegations in this lawsuit concern Plaintiff's attempt to add authorized contacts to his contact list. For reasons explained herein, the Court dismisses the *Bivens* claims, and it will allow the substitution of the United States as a party for the state tort law claims.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. *See Gibson v. Carrington*, 2021 WL 1667036 at *1 (S.D. Ind. 2021) (conducting 1915A review for a removed case). Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that he is a federal inmate, who at the time of filing this lawsuit, was an inmate at the Marion, in the Illinois Communications Management Unit (CMU). (Doc. 1-1 at 5). As a resident of the CMU, his incoming and outgoing communications were monitored including emails, phone calls, and general correspondence. He alleges that each inmate of the CMU is assigned to an analyst who is responsible for monitoring their communications. His assigned analyst was Defendant Graeber.

Plaintiff alleges that several weeks prior to filing his lawsuit, he sought to add seven addresses to his approved contacts. He alleges that other inmates have the same seven contacts on their approved list. (*Id.* at 5-6). Despite other inmates having these contacts approved, Plaintiff alleges that Defendants Graeber and Hill refused to approve these contacts for his own contact list. Plaintiff confronted Hill about the non-approval, but he alleges it took her weeks to respond. On October 18, 2021, Plaintiff alleges that

Hill told him his contacts were not approved because the addresses were incorrect. Plaintiff argues that handling of his request for the seven contacts was improper because other inmates have the contacts approved. He further alleges that the handling is consistent with a longstanding policy in the CMU which results in some inmates' contacts not being approved. Plaintiff alleges that as supervisors, Defendants Sproul, Leclair, and Davis knew about this practice but failed to do anything about it. Plaintiff also alleges Hill, Sproul, Leclair, and Davis, have failed to improve the timeliness of approving contacts, which can take more than two weeks. Plaintiff alleges he submitted a BP-9 about this issue to Simkins (not a defendant) but he did not receive a response within the three-day response period.

As a result of the issues, Plaintiff alleges that his First Amendment rights have been violated by Hill, Sproul, Leclair, Graeber and Davis by their refusal to approve his contacts. He seeks damages against these individuals under *Bivens* in their individual capacity. He also seeks injunctive relief against all defendants in their official capacity in the form of an order directing the defendants to approve his contacts and to not delay future approvals. Additionally, Plaintiff brings claims for conspiracy, negligence, and intentional infliction of emotional distress under Illinois law against Hill, Graeber, Leclair, Sproul and Davis.

The court designates the following Claims, based on the Complaint:

**Claim 1:** **First Amendment claim against defendants in their individual capacities for refusing to add seven contacts to Plaintiff's approved contact list;**

> Claim 2: First Amendment claim against defendants in their official capacity for injunctive relief, specifically the addition of seven contacts to Plaintiff's list, and no future delays in adding contacts;
>
> Claim 3: Illinois law conspiracy claim;
>
> Claim 4: Illinois law negligence claim;
>
> Claim 5: Illinois law intentional infliction of emotional distress claim.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Defendants' Notice of Removal

In the Notice of Removal, Defendants' argue that the claims in Plaintiff's complaint are removable either under 28 U.S.C. § 1442(a)(1), or 28 U.S.C. § 2679. (Doc. 1 at 1). Defendants argue that during the timeframe in question, the Defendants were all employees of the BOP. (Doc. 1 at 2-4). The Defendants included a certification that the named parties were acting within the scope of their employment. (Doc. 1-2 at 2-3). Further, to the extent the Court construes the case as properly brought under the Constitution, Defendants argue that such a claim can be removed pursuant to 28 U.S.C. §§ 1331 and 1442(a)(1). (Doc. 1 at 4-6).

## Analysis

The Court will begin with an analysis of Plaintiff's First Amendment claim against the Defendants in their individual capacity.  Specifically, Plaintiff alleges that the defendants violated his First Amendment rights by delaying or denying the approval of seven contacts for his approved contact list. The Supreme Court's decision in *Bivens* "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."  *Carlson v. Green*, 446 U.S. 14, 18 (1980).  The commonly accepted *Bivens* claims are those for: excessive force in violation of the Fourth Amendment; violation of the Fifth Amendment right to due process; and, violation of the Eighth Amendment via deliberate indifference to a serious medical need.  See *Bivens*, 403 U.S. 388; *Davis v. Passman,* 442 U.S. 228 (1979) (Fifth Amendment Due Process damage remedy for gender-based termination of female government employee); *Carlson*, 446 U.S. 14 (Eighth Amendment deliberate indifference claim allowed regarding deceased inmate's asthma care regime).  The Supreme Court has recently emphasized the narrow bounds of claims for damages against the federal government that can proceed under the guise of *Bivens*.  See e.g. *Hernandez v. Mesa*, 140 S.Ct. 735 (Feb. 25, 2020) (discussing the very narrow acceptance of newly recognized categories of *Bivens* claims); *Ziglar v. Abbasi*, 137 S.C.t 1843 (2017) (same).

In *Abassi*, the Court emphasized that  *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.  *Abbasi*, 137 S.Ct. at 1855.  The Court cautioned that further

expansion of *Bivens* has become "disfavored judicial activity." *Id.* at 1857. Courts use a two-step process to determine if a claim fits within a pre-existing area of *Bivens*, or if expansion of *Bivens* would be appropriate. At the first step, the Court must determine if a particular claim fits closely within the bounds of the three identified areas. Considerations include the constitutional right at issue, the rank of the officers involved, the generality or specificity of the official action, the extent of judicial guidance for the official conduct, the statutory or other legal mandate under which the officer was operating, and the risk of disruptive intrusion by the Judiciary into the functioning of other government branches, among other things. *Id.* at 1859-60. If the claim does not fit within one of the three identified areas of *Bivens*, then a court considers whether special factors weigh for or against recognition of such a claim. The factors include: "whether the Judiciary is well-suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," and whether "there is an alternative remedial structure present in a certain case." *Abbasi*, 137 S.Ct. at 1858.

Plaintiff's First Amendment claim does not align with one of the narrowly recognized theories of *Bivens* relief. Courts around the country have carefully considered the viability of a First Amendment claim under *Bivens*, both before and after *Abassi*. The vast majority of courts have concluded that such a claim is unavailable under *Bivens*. *See e.g. Sharp v. Numsen*, 2022 WL 834421 (W.D. Wis. Mar. 21, 2022) (declining to extend *Bivens* to a First Amendment claim concerning alleged screening of inmate's mail); *Kluball v. Bell*, 2022 WL 782734 *1-*2 (C.D. Ill Mar. 14, 2022) (dismissing at § 1915A review a First

Amendment access to the courts claim as not a valid theory under *Bivens*); *Piggee v. McMillin*, 2022 WL 409682 *1, *3 (C.D. Ill. Feb. 9, 2022) (declining to extend *Bivens* to a First Amendment claim alleging retaliation, and collecting cases for the proposition that *Bivens* should not be extended to First Amendment claims at § 1915A review); *Sargeant v. Barfield*, 2021 WL 2473805, *1, *3 (N.D. Ill. 2021) (dismissing a First Amendment claim alleging retaliation on the basis that precedent does not support the extension of *Bivens* to such a claim); *Redmon-El v. Sullivan*, 2021 WL 4477814 (N.D. Ill. 2021) (concluding with briefing that there should be no extension of *Bivens* to a First Amendment retaliation claim); *White v. True*, 2019 WL 3074528 (S.D. Ill 2019) (concluding that the First Amendment should not be extended under *Bivens* to claims concerning a federal inmate's access to mail).

The Court notes that in 2019, the Seventh Circuit remanded a case to this District for consideration of whether a First Amendment claim should be recognized under *Bivens* because the panel opined that the claim could not be fully evaluated on the record at § 1915A review without the benefit of briefing. *Smadi v. True*, 783 Fed. App'x 633 (7th Cir. 2019). In *Smadi*, the plaintiff (an inmate in Marion's CMU) alleged that prison officials blocked mail he attempted to send to a criminal defense attorney seeking legal representation. The prison officials also allegedly blocked plaintiff from sending communications to an ambassador in Washington, D.C., a journalist, and other personal mail. On remand, District Judge Phil Gilbert evaluated the availability of a *Bivens* claim based on the First Amendment with the benefit of full briefing. Judge Gilbert concluded that the First Amendment claim presented a new *Bivens* context, and that special factors

counseled hesitation in further expansion of the *Bivens* remedy to include such a First Amendment claim.  *Smadi v. True*, 2021 WL 2853262 (S.D. Ill. 2021).

Other district courts in the Seventh Circuit have confronted the issue that arose in *Smadi* and have similarly concluded that a First Amendment claim related to prison communications would be an expansion of *Bivens*, and that such an expansion is not warranted.  Of specific note, in *Sharp v. Numsen*, the court extensively analyzed five special factors (interference with sensitive government functions, the importance of separation of powers and congressional authority to create prison damage remedies, system wide cost and effect of extending *Bivens*, the ability to actually implement an extension of *Bivens* in the prison mail context, and the chilling effect of *Bivens* remedies on prison duties), and concluded that the factors weighed against recognizing a First Amendment *Bivens* claim concerning a federal inmate's access to mail.  2022 WL 834421 (W.D. Wis. Mar. 21, 2022).  The *Sharp* Court's discussion of factors is clearly applicable to this case, and if this case were to be briefed, many of the same factors would be regurgitated. Judge Gilbert undertook the same detailed review in *Smadi* on remand, and likewise concluded, even with the benefit of briefing, that "[t]he overwhelming weight of authority counsels hesitation in expansion of the *Bivens* remedy into the First Amendment context post-*Abassi*."  2021 WL 2853262 *6 (S.D. Ill. 2021) (collecting cases from federal courts of all levels concluding that *Bivens* should not be expanded to First Amendment claims).

Indeed, since *Smadi*, some federal courts have continued to dismiss First Amendment claims at § 1915A review.  *Kluball v. Bell*, 2022 WL 782734 *1-*2 (C.D. Ill Mar.

14, 2022) (dismissing at § 1915A review a First Amendment access to the courts claim as not a valid theory under *Bivens*); *Piggee v. McMillin*, 2022 WL 409682 *1, *3 (C.D. Ill. Feb. 9, 2022) (declining to extend *Bivens* to a First Amendment claim alleging retaliation, and collecting cases for the proposition that *Bivens* should not be extended to First Amendment claims at § 1915A review).

Based on a thorough review of cases that addressed factually and legally similar issues, the Court concludes that *Bivens* does not extend to a First Amendment claim concerning access to mail privileges in the CMU at Marion. The Court does not find that briefing would be necessary or beneficial to resolve this question because other courts in this circuit have sought such briefing in the past few years and have repeatedly concluded that *Bivens* should not be expanded in this fashion. This is especially true because Judge Gilbert closely considered activities in the CMU at Marion in light of the First Amendment and *Bivens* last summer when he revisited the *Smadi* case with briefing. The analysis in that case is sound, and the Court finds it unnecessary to reduplicate those efforts. *See McClure v. Watson*, 2022 WL 656908, *1, *6 (S.D. Ind. Mar. 4, 2022) (noting that since *Smadi* there have been dozens of persuasive opinions declining to recognize First Amendment *Bivens* claims in the context of civil rights lawsuits by federal prisoners, and finding that with the benefit of this newer persuasive authority the Court was able to conclude that such a claim should be dismissed). Thus, the Court will dismiss Plaintiff's First Amendment claims concerning his approved mail contact list at Marion because this claim calls for an extension of *Bivens* that is not justified. The claim will be dismissed without prejudice.

Next, the Court considers Plaintiff's claim for injunctive relief. Specifically, Plaintiff alleges that he seeks injunctive relief from the defendants in their official capacity. (Doc. 1-1 at 6). "For the previously stated reasons, plaintiff seeks injunctive relief against Hill, Graeber, Sproul, Leclair and Davis, ordering them to approve Plaintiff's contacts, and to NOT delay approving of any of the plaintiff's contacts in the future. This claim is brought against the defendants in their OFFICIAL CAPACITIES, under Bivens." (*Id.*). A plaintiff cannot bring a *Bivens* claim against a defendant in his or her official capacity. *See Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002). This is because an action for damages against an individual in his official capacity is an action against the government and is thus barred under the Eleventh Amendment. *Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir. 1987). As such, Plaintiff's claim for injunctive relief cannot succeed as precisely pled.

However, the Court notes that injunctive relief claims against federal officials have been allowed using other legal pathways. For example, a claim may be brought under the Administrative Procedure Act (APA), which allows suits for injunctive relief against the United States. *See* 5 U.S.C. § 702; *Thomas v. Watts*, 2013 WL 3043686 *1, *5 (S.D. Ind. 2013). Additionally, courts have suggested that there is a general equitable power to effectuate injunctive relief for violations of law by the federal government. *See id*; *Whiteside v. Hill*, 21-cv-806-JPG (S.D. Ill. Mar. 31, 2022) (docket entry 10) (allowing claims for injunctive relief to proceed against Warden of Marion). A plaintiff can bring an official capacity claim for injunctive or declaratory relief against a defendant in his or her official capacity if that officer is likely to be the one to implement injunctive relief. *See e.g.*

*Lutz v. United States*, 2017 WL 2588073, *1, *2 (C.D. Ill. 2017) (allowing a claim against a warden in official capacity because he would be the party to implement injunctive relief); *Thomas*, 2013 WL 3043686 at *5 (allowing a claim for injunctive relief to proceed against a prison doctor, and affording the doctor an opportunity to substitute a different employee if he is not the one who is able to implement injunctive relief). Because an official capacity *Bivens* claim for injunctive relief is not appropriate, this Court will dismiss Claim 2. Plaintiff is free to seek leave to file an amended complaint if he believes that injunctive relief may be appropriate under another theory.

      Finally, as to the Defendants removal of the state law claims in reliance on the Westfall Act, the Court finds that such removal is proper. *Osborn v. Haley*, 549 U.S. 225, 230-32 (2007). The Westfall Act grants federal employees' absolute immunity from tort claims arising out of acts undertaken in the course and scope of a federal employee's employment. *See id.*, 549 U.S. at 230 (citing 28 U.S.C. § 2679(b)(1)). It amended the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80, to require substitution of the United States as a defendant in a tort suit brought against a government employee. *Id.* at 230. It empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," and renders the Attorney General's certification "conclusiv[e]…for purposes of removal." *Id.* (citing 28 U.S.C. §§ 2679(b)(1), (d)(1), (2)). Upon such certification, the United States is substituted as defendant in place of the federal employee, and the employee is dismissed. *Id.* (citing § 2679(d)(2)). The action is then governed by the FTCA.

Here, there are three claims that rely on state law — a claim for conspiracy, a claim for negligence, and a claim for intentional infliction of emotional distress. These claims will be allowed to proceed against the United States, because the Chief of the Civil Division of the local United States Attorney's Office[1] has certified that the defendants were acting as employees of the United States during the conduct complained of in this case. The Clerk of Court will be **DIRECTED** to **ADD** the United States as a defendant in this action. The United States will be the sole defendant for counts 3-5.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** is **DISMISSED** without prejudice because relief for a First Amendment claim concerning interference with communications of an inmate is not available under *Bivens*. **Claim 2** shall be **DISMISSED** without prejudice because a plaintiff cannot bring a *Bivens* claim against a defendant in his or her official capacity, but Plaintiff may request leave to amend his complaint as to Claim 2 for injunctive relief. **Claims 3-5** shall proceed against the United States. The Clerk of Court is **DIRECTED** to **ADD** the United States as a party. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Hill, Sproul, Leclair, Graeber and Davis because with the substitution of the United States and the dismissal of Claims 1 and 2 there are no remaining claims against these parties.

---

[1] A United States Attorney may issue the certification in lieu of the Attorney General. *See* 28 C.F.R. § 15.4(a). In the instant case, the United States Attorney delegated this authority to the Chief of the Civil Division, who certified that all Defendants were acting with the scope of their employment at the time of the incidents out of which the claims arose. (Doc. 1-2).

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendant the United States; the Clerk shall issue the completed summons.

Pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed without payment of fees was granted by the state court. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with

this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Dated: April 1, 2022

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

<u>Notice to Plaintiff</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.